# CHARLESTON.

LEWIS, HUBBARD & CO. v. MORTON *et als.*

Submittted March 20, 1917.   Decided April 3, 1917.

1.  BILLS AND NOTES—*"Bill of Exchange"*—*Construction of Instrument.*

    A written request in the following words, addressed by one person to another and signed by the person making it, is a bill of exchange, viz.: *"$165.49.  Please pay to the order of Lewis Hubbard & Co.  One Hundred sixty five & 49/100 Dollars and charge to our acct."*   (p. 137).

2.  SAME—*Evidence—Bill of Exchange—Validity—Presumption—Parol Evidence.*

    Neither the absence of a date, or failure to specify a time of payment affects the validity of such bill.  Presumptively it bears date as of the time of its issue, which may be shown by parol evidence, and is payable on demand.   (p. 137).

3.  SAME—*Bill of Exchange—Acceptance.*

    The drawee of a bill of exchange is not bound to take a qualified acceptance, and, if he does so, he must give the drawer reasonable notice thereof, otherwise he is discharged from liability.   (p. 139).

Error to Circuit Court, Clay County.

Action by Lewis, Hubbard & Co., against J. J. Morton and others.  Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*B. C. Eakle,* for plaintiff in error.

*S. W. Bryant,* for defendants in error.

WILLIAMS, JUDGE:

This writ of error was awarded to a judgment for defendants, rendered by the circuit court of Clay county in an action therein tried on an appeal from the judgment of a justice.

Being indebted to Lewis, Hubbard & Co., a corporation, defendants gave it the following order:

"West Virginia Timber Co.,
   Charleston, W. Va.

$165.49.   Please pay to the order of Lewis Hubbard & Co., One Hundred sixty five & 49/100 Dollars and charge to our acct.

      J. J. Morton & Co.
       By J. J. Morton."

The West Virginia Timber Company conditionally accepted the order as follows:

"This order will be paid whenever the lumber is inspected and placed to the credit of J. J. Morton & Co.

     West Virginia Timber Co.,
      G. E. Breece, President."

Neither the order nor the acceptance is dated nor is any time of payment specified. But the absence of a date and failure to state time when payable do not render the order invalid. An instrument in which no time for payment is expressed is payable on demand. Sec. 7, Ch. 98A, Barnes' Code; 1 Daniel Neg. Inst., sec. 88; 3 R. C. L. 920. An instrument not dated will be considered to be dated as of the time it was issued. Secs. 4 and 17, Ch. 98A, Code; and 1 Dan. Neg. Inst., sec. 83.

The contention, that the paper is not a bill of exchange, can not be sustained. It fills the description of such instrument in every material respect. Sec. 126, Ch. 98A, Code, defines a bill of exchange to be "an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand, or at a fixed, determinable future time, a sum certain in money to order or to bearer." This definition is but declaratory of the law merchant. 1 Dan. Neg. Inst., sec. 35. "'A bill of exchange is defined as an open letter of request from and order by one person on another, to pay a sum of money therein mentioned to a third person at a specified time absolutely and at all events." 3 R. C. L. 830. We have already seen that the absence of a date or time of payment is not material.

The uniform negotiable instruments statute makes little

alteration in the law of this state as it was understood to be at the time of the passage of the act, and in nearly all respects it is only declaratory of the general law merchant; and it is not necessary to a decision of this case to determine whether or not any discrepancy in fact exists between the general law and the statute, and if any exists, to what extent, because the statute controls our decision here in any event. It became effective on the 1st of January, 1908, and the order to Lewis, Hubbard & Co., or bill of exchange, was not issued until some months thereafter. This appears from the testimony of W. D. Guyer, a witness for plaintiff, who says the order was received on August 26, 1908. Moreover, it appears that the order was given in payment of a note which defendants had previously executed to Lewis, Hubbard & Co., bearing date on the 16th day of May, 1908, payable in sixty days from its date. These are undisputed facts showing the order must have been issued on, or about the 26th of August, 1908.

On the 19th of January, 1907, the defendants, J. J. and L. L. Morton, partners, had, by written contract, sold to the West Virginia Timber Company all the lumber of certain description then on their mill-yards at Greendale, estimated to be about 150,000 feet, and all the lumber of the same descriptions that they would saw at the same place, likewise estimated to be about 150,000 feet, at prices ranging from $12.50 to $36.00 per M. feet, according to kinds and grades. The Timber Company was to inspect it, according to the rules of the National Hardwood Lumber Association, when it was in shipping condition, and such inspection was to be the basis of settlement between them. The Timber Company was then to execute its acceptance, due in four months, for seventy-five per centum of the value of the lumber inspected, and the other twenty-five per centum was to be paid when the lumber should be delivered at the railroad. Defendants were to make delivery at the railroad, and were to begin as soon as the country roads were in condition for hauling, and to complete delivery by the 1st of August, 1907, including the lumber not then manufactured.

The West Virginia Timber Company never paid the order,

and this action against the drawers is predicated upon their implied promise to pay it if the drawee did not. Defendants were not notified of the conditional acceptance of the order, nor of its non-payment, until this action was instituted in the justice's court, more than seven years after acceptance, and claim they delivered more than enough lumber, at the agreed prices, to cover the amount of the order and money, admittedly advanced to them on estimates by the Timber Company, which was $2,250. They claim a balance due them of $18.02, after debiting their account with the amount of the order. This contention is supported by their testimony. On the other hand, plaintiff's witnesses testified that the lumber delivered to the Timber Company lacked $100.80 of covering the money actually advanced by it to defendants. The conflict in testimony is wholly in respect to the amount of the timber inspected and delivered, not as to the amount of money actually paid. But in our view of the case it does not turn upon this conflicting evidence. The acceptance being qualified, the drawers were entitled to reasonable notice thereof, and there is no pretense that they were ever notified, nor that they ever either expressly or impliedly authorized such acceptance, or thereafter assented to it. They knew nothing of it, and, after the lapse of a reasonable time after the bill was issued, were justified in assuming it had been paid. There had been no settlement of the lumber account between defendants and the West Virginia Timber Company, and their lumber dealings were such as justified defendants in believing there was enough due them to pay the order. They were, therefore, entitled to notice, within a reasonable time, of the qualified acceptance, and plaintiff's failure to give them such notice discharged them from liability. The relation of acceptor and drawer is that of principal and surety, or of maker and indorser of a negotiable note. After acceptance the drawer is not primarily liable, and the drawee, or holder, of such paper is bound to exercise reasonable diligence to collect from the acceptor, on pain of losing his remedy against the drawer. The drawee had a right to treat the qualified acceptance as a dishonor. It did not do so, and left the bill in the pos-

session of the acceptor after acceptance, together with the note, marked paid, for the discharge of which the bill had been issued, and apparently forgot all about the transaction, until shortly before the institution of this suit a discrepancy was discovered in the accounts between the drawee and acceptor. .This discrepancy was caused by the acceptor's failing to debit its account with the order, whereas the drawee had charged it with it. In endeavoring to ascertain the cause of the discrepancy the West Virginia Timber Company discovered the order and the note, filed away among its papers where, apparently, it had slumbered for nearly eight years. Under the facts and circumstances, disclosed by the undisputed testimony, plaintiff was guilty of such negligence as discharges the drawers from liability. This conclusion is abundantly supported by the authorities generally, but we need not cite them as the negotiable instruments statute itself determines the question. Sec. 142 of that statute provides: ''where a qualified acceptance is taken, the drawer and indorsers are discharged from liability on the bill, unless they have expressly or impliedly authorized the holder to take a qualified acceptance, or subsequently assent thereto.'' Having failed to give defendants notice of the qualified acceptance, plaintiff has lost its right of recourse on the drawers. Its position is not different from what it would have been if the bill had been dishonored and defendants had received no notice of the dishonor. The court should have given the peremptory instruction asked for by defendants, and, therefore, the judgment in their favor is affirmed.

*Affirmed.*